plaintiff nor his agent consented that defendant might delay the due presentment of said check for any reason; that plaintiff had no knowledge of any custom or practice of defendant to hold such checks until the receipt of any report from its police department; that defendant held said $1,000 check, and made no attempt to have the same presented for payment, until May 21, 1914; that because of such delay in presentment the money on said check was not received by defendant; and that on June 12, 1914, plaintiff again paid defendant, under protest and because of threats of arrest, the sum of $1,000 for said license fees for said two saloons.

---

E. E. McCarthy and C. P. Lardie, trading as McCarthy & Lardie, Appellants, v. Chicago & Northwestern Railway Company, Appellee.

Gen. No. 21,264.   (Not to be reported in full.)

Appeal from the County Court of Cook county; the Hon. FRANK G. PLAIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed March 28, 1916.

### Statement of the Case.

Action in assumpsit by E. E. McCarthy and C. P. Lardie, trading as McCarthy & Lardie, plaintiffs, against Chicago & Northwestern Railway Company, defendant, for damages for injury to three cars of potatoes. From a judgment in favor of defendant, plaintiffs appeal.

The potatoes were loaded into three cars at Spencer, Michigan, from which point they were consigned over the route designated "Ludington & C. & N. W.," in

406 APPELLATE COURTS OF ILLINOIS.

McCarthy et al. v. Chicago & Northwestern Ry. Co., 198 Ill. App. 405.

bills of lading issued by the Pere Marquette Railroad Company on January 30, 1912, which bills of lading showed the potatoes to have been received in apparently good order. After being conveyed to Traverse City, Michigan, and to Ludington, Michigan, they were ferried across Lake Michigan, arriving in Manitowoc, Wisconsin, on February 2, 1912, on which day the temperature ranged from 15 degrees above to 7 degrees below zero, and on the following day from 3 degrees above to 16 degrees below zero. Plaintiffs' agent and caretaker, C. E. Martin, testified that he rode in the cars from Traverse City to Chicago and kept a hot fire in the stove in each car at all times.

A telegram saying, "We will stand the loss if any by *freezing;* send cars forward *today,* to Grand Avenue, Chicago," was received by defendant's agent at Manitowoc at 1:15 p. m. on February 2nd, and the cars were received by defendant at 2:30 p. m. the same day. The cars were hauled to defendant's freight yard where they remained until 4 p. m., February 3rd, whence they left for Chicago, arriving there on February 5th.

At about noon on February 2nd, B. A. Little, assistant freight claim agent of defendant at Chicago, informed E. E. McCarthy, one of the plaintiffs, that on that morning defendant had wired instructions to its agents at certain junction points, including Manitowoc, not to receive perishable goods from shippers on connecting lines on account of the weather conditions.

Subsequently, on the same day, plaintiffs again wired defendant's freight agent at Manitowoc as follows: "Put cars we wired on this morning in roundhouse. Wait instructions from Mr. Little." This telegram was received by defendant's said agent at 4:17 p. m. It did not appear that any instructions were afterwards received by said agent from Little or that Little was to send any. Defendant maintained a

roundhouse at Manitowoc. It contained only four stalls, each stall capable of housing one engine or one freight car, and defendant there had no other facilities for "roundhousing" engines or cars containing perishable goods. On the night of February 2nd, two of defendant's engines were put in said roundhouse and two freight cars, of the refrigerator type having no stoves therein, containing perishable goods. It appeared that it is not the custom to "roundhouse" any car containing perishable goods where the car has false bottoms and sides and a stove therein and an attendant to maintain the fires, as was the case with the cars in question. It further appeared from the testimony of plaintiffs' caretaker, Martin, in charge of the heating of the cars, that when freight train No. 180, scheduled to leave Manitowoc on the afternoon of February 2nd, finally arrived from the north about 2 o'clock on the morning of February 3rd, he heard the conductor of the train say that he could not put the three cars in said train for the reason that "he had his tonnage," which meant that he then had in his train all the cars he could haul on his division; that the cars in question remained in the yard exposed to the cold wind; that notwithstanding he kept a hot fire in the cars all the time some of the potatoes at the ends of the cars were frozen on February 3rd and before they left Manitowoc; and that they were in good condition and not frozen when they arrived in Manitowoc. It further appeared from the evidence that shortly after the arrival of the potatoes in Chicago, on February 5th, the same were sold, and that solely because of their frozen condition plaintiffs sustained a loss of about $773. It did not appear, however, that plaintiffs suffered any damages by reason of any unreasonable delay, if such delay there was, in the delivery of the potatoes at Chicago.

CHARLES A. BUTLER, for appellants; FRANKLIN RABER, of counsel.

C. A. VILAS and I. C. BELDEN, for appellee; WILLIAM G. WHEELER, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

### Abstract of the Decision.

1. CARRIERS, § 139*—*when evidence sufficient to establish that carrier had not breached its contract to carry produce safely.* In an action of assumpsit for damages for injury to three carloads of potatoes, evidence *held* sufficient to establish that the railroad company had not failed in the performance of its implied contract to safely carry plaintiffs' potatoes, it appearing that plaintiffs wired defendant's agent, before the cars were received by defendant, to accept the cars, that any loss by freezing would be stood by plaintiffs, that weather conditions were severe, and that the cars were heated by stoves in charge of plaintiffs' caretakers.

2. CARRIERS, § 121*—*when shipper assumes liability for loss by freezing of produce.* A telegram from plaintiffs to the agent of defendant railroad to accept cars and that they would stand any loss to the potatoes by freezing, *held* not to be construed as only meaning that plaintiffs would relieve defendant from its liability as an insurer and not from liability resulting from negligence, but that such telegram and the action of defendant thereafter in accepting such cars should be considered as in the nature of a special agreement between the parties whereby they proposed to defendant that if it would accept the cars at once they would assume loss by freezing, it appearing that plaintiffs were anxious to get the potatoes to destination as quickly as possible, and knew of severe winter weather conditions whereby the cars might be held up at a ferry landing, and that cars were heated and in charge of caretaker.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.